**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM SCHIERBAUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:21-cv-573 ACL |
| | ) |
| TOM CANAVAN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff William Schierbaum, a prisoner, for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $75.47. Additionally, for the reasons discussed below, the Court will direct the Clerk of Court to issue process or cause process to be issued as to defendants Tom Canavan and Christ Beard in their individual capacities, and will dismiss from this action defendants Wright City Police Department, Unknown Eskew, Unknown Tomlin, Unknown Catron, Unknown Lackey, and Unknown Matthews.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $377.36, and an average monthly balance of $192.58. The Court will therefore assess an initial partial filing fee of $75.47, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

This Court is required to review complaint filed *in forma pauperis*, and must dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

2

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983 against the Wright City Police Department and the following seven individuals: Tom Canavan, Christ Beard, Unknown Tomlin, Unknown Catron, Unknown Lackey, Unknown Matthews and Unknown Eskew. Plaintiff can be understood to identify all of the individual defendants as law enforcement officers employed by the Wright City Police Department. He sues them in their official and individual capacities.

Plaintiff's claims arise from the execution of a search warrant on December 16, 2016 at a home he identifies as the home "of which I was paroled to." It is not entirely clear whether plaintiff intends to claim he had a legal interest in the home. He specifies he was not criminally charged following the execution of the search warrant, and that his claims are unrelated to his current incarceration. Plaintiff's claims and supporting allegations are as follows.

On December 20, 2016, Canavan, Beard, Tomlin, Catron, Lackey and Matthews forced entry into a home while plaintiff was inside, and announced they were there to execute a search warrant. Plaintiff was in bed at the time, and was under a sheet attempting to dress when Canavan

hit him on the forehead with the butt of a firearm. The blow injured plaintiff's forehead and caused bleeding, and caused plaintiff to tumble to the other side of the bed. Canavan and Beard then "began to kick and stomp plaintiff with excessive force." Plaintiff was handcuffed and taken to the living room.

An EMS crew arrived, and began attending to plaintiff's injuries. The EMS crew asked other defendants for permission to remove plaintiff's handcuffs. The request was conveyed to Canavan, who denied it. The EMS crew then took plaintiff to the ambulance, removed his handcuffs, attended to his injuries, and took him to the hospital.

Plaintiff claims the search warrant was procured "through the obstruction of the administration of justice and falsifying the records of the Record Room of the Wright City Police Department" by "defendants." He claims Matthews "approved all unconstitutional actions of the defendants," and Eskew "as the Respondeat Superior is sole[ly] responsible for the actions of his subordinates whether good or bad."

Plaintiff claims Canavan "committed fraud and obstruction of the administration of justice when he violated State and Federal law to beguild [*sic*] the Judge of the Court by way of false evidence to issue a Search Warrant lawfully ordered to violate plaintiff's constitutional rights." He also claims the "defendants" obstructed justice by "falsifying the record" to persuade a judge "to issue a lawful search warrant on December 16, 2016." Plaintiff states Beard conspired with Canavan, and he also refers to the defendants collectively as "the Defendants" and states they "CONSPIRED to obstruct the administration of justice and Falsified the Record at the Wright City Police Department" in order to violate his constitutional rights. Again referring to the defendants collectively, he claims there was a "meeting of the minds" to assault him and "invade his dwelling with Malfeasance intent and execution." He seeks declaratory and monetary relief.

4

## Discussion

Plaintiff has named the Wright City Police Department as a defendant. However, the Wright City Police Department is a department or subdivision of local government, and is not itself an entity that can be sued under § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (entities such as police departments are "not juridical entities suable as such. They are simply departments or subdivisions of the City government"); *see also De La Garza v. Kandiyohi County Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (sheriff's departments and police departments are not usually considered legal entities subject to suit under § 1983). Even if plaintiff had named the municipality as a defendant, the complaint would not state a claim of municipal liability. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978) (describing the elements of a municipal liability claim). Therefore, the Wright City Police Department will be dismissed from this action.

Plaintiff has also sued Canavan, Beard, Tomlin, Catron, Lackey, Matthews and Eskew in their official capacities. Naming a government official in his official capacity is the equivalent of naming the government entity that employs him. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Here, plaintiff identifies the individual defendants as law enforcement officers employed by the Wright City Police Department. However, as noted above, that entity is not one that is suable under § 1983, *see Ketchum*, 974 F.2d at 82, and the complaint would not state a claim of municipal liability. *See Monell*, 436 U.S. at 690-91. Therefore, plaintiff's official capacity claims against Canavan, Beard, Tomlin, Catron, Lackey, Matthews and Eskew are subject to dismissal.

The Court now turns to plaintiff's individual capacity claims. First, plaintiff claims Canavan and Beard used excessive force against him when Canavan hit him on the forehead with

5

the butt of a gun, and he and Beard then kicked and stomped him. These claims arise under the Fourth Amendment, which "protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person") and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

"To determine whether a particular use of force was excessive, the court considers whether it was objectively reasonable under the circumstances, relying on the perspective of a reasonable officer present at the scene, rather than the 20/20 vision of hindsight." *Awnings v. Fullerton*, 912 F.3d 1089, 1100 (8th Cir. 2019) (quoting *Ehlers v. City of Rapid City,* 846 F.3d 1002, 1011 (8th Cir. 2017)). *See Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015) (whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Factors relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019).

"When an arrestee flees or resists, some use of force by the police is reasonable." *Awnings,* 912 F.3d at 1100 (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994)). *See also Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure).

Here, plaintiff alleges he was in bed, and he can be understood to allege he was not posing a threat, resisting the officers, or trying to flee when Canavan hit him on the forehead with the butt of a gun. Plaintiff can also be understood to allege that the blow incapacitated him, and that while he was incapacitated and bleeding, Canavan and Beard kicked and stomped him. Having liberally construed plaintiff's allegations, the Court concludes they adequately state individual capacity claims for excessive force in violation of the Fourth Amendment to the United States Constitution. Canavan and Beard will therefore be required to respond to those claims.

In a footnote in the complaint, plaintiff states that Beard "conspired with defendant Canavan," and in other portions of the complaint he claims "the defendants" conspired against him and had a "meeting of the minds." To plead a § 1983 claim for conspiracy, a plaintiff must allege, *inter alia*, a meeting of the minds among the conspirators "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 798 (8th Cir. 2013) (quoting *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). While an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy. *See Mershon v. Beasely*, 994 F.2d 449, 451 (8th Cir. 1993). Here, plaintiff offers nothing more than summary allegations of a conspiracy. He alleges no facts permitting the inference that Beard and Canavan, or any other defendant, reached an agreement to deprive him

7

of any of his federally-protected rights. The Court therefore concludes the complaint fails to state a § 1983 claim for conspiracy against Beard, Canavan, or any other defendant.

Plaintiff can be understood to claim that Canavan is liable to him for wrongfully denying medical treatment. In support, he alleges that while he was inside the residence, Canavan said the EMS crew could not remove his handcuffs, so the EMS crew took him to the ambulance, removed his handcuffs, and provided medical treatment. Plaintiff's allegations simply fail to establish that Canavan did or failed to do something that amounted to a denial of medical treatment. Therefore, the complaint fails to state a claim against Canavan premised upon a denial of medical care.

Plaintiff also claims Canavan "committed fraud and obstruction of the administration of justice when he violated State and Federal law to beguild [*sic*]" a judge, "by way of false evidence," to issue a "lawful" search warrant. Plaintiff advances similar claims against "the defendants" collectively, claiming they procured the search warrant by falsifying records and had a "meeting of the minds." Those allegations are nothing more than legal conclusions that are not entitled to the presumption of truth. Plaintiff makes no attempt to allege the most basic of facts, such as what evidence or records were allegedly false, or what Canavan or any other defendant did or failed to do that amounted to a violation of his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."). Finally, as discussed above, plaintiff's allegations are insufficient to state a § 1983 conspiracy claim against any defendant. While *pro se* complaints must be construed liberally and additional details may be exposed later after discovery, the complaint must still allege sufficient facts to support the claims advanced. *Stone*, 364 F.3d at 914.

Plaintiff also claims Canavan and "the defendants" obstructed justice and violated State and Federal law. To the extent plaintiff can be understood to seek a criminal investigation or

8

prosecution of Canavan or anyone else, he is advised he has no basis to do so. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation"); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Next, plaintiff claims Matthews is liable to him because he "approved all unconstitutional actions of the defendants," and Eskew is liable to him "as the Respondeat Superior" and is "sole[ly] responsible for the actions of his subordinates." Plaintiff identifies Matthews and Eskew as having supervisory authority. However, he does not allege they were personally involved in or directly responsible for any incidents that deprived him of his constitutional rights, nor does he allege they were involved in creating, applying or interpreting a policy that gave rise to unconstitutional conditions. Instead, he claims Matthews and Eskew are liable to him because they had supervisory authority over others who allegedly violated his rights. These claims sound in respondeat superior, and are not cognizable under § 1983. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

Finally, plaintiff lists the names of Catron, Beard, Matthews, Tomlin, Catron, and Lackey and claims they "forced entry" into a home while he was inside, and announced they were there to execute a search warrant. As indicated above, plaintiff does not clearly claim he had a legal interest in the home. Additionally, he alleges no facts permitting the inference that the listed defendants lacked a lawful reason to enter the residence. There is simply no basis to conclude that Catron, Beard, Matthews, Tomlin, Catron, and Lackey violated any of plaintiff's federally-protected rights

9

by entering the residence. Plaintiff therefore fails to state a valid § 1983 claim against these defendants. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to state a claim under 42 U.S.C. § 1983, a plaintiff must establish, *inter alia*, the violation of a right secured by the Constitution or laws of the United States). For all of the reasons explained above, the Court concludes that with the exception of plaintiff's individual capacity claims for excessive force, the complaint fails to state a plausible claim for relief against Catron and Beard. The Court further concludes that the complaint fails to state any plausible individual capacity claims for relief against Eskew, Matthews, Tomlin, Catron and Lackey.

Plaintiff has also filed a motion to appoint counsel. A *pro se* litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams,* 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and present his or her claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

In this case, there is no indication that plaintiff is incapable of representing himself, and nothing in the instant motion or in the record before the Court indicates that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, the defendants have yet to be served with process and discovery has not begun, so there is no conflicting

testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice, and will entertain future such motions, if appropriate, as the case progresses.

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, plaintiff must pay an initial filing fee of $75.47. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendants Tom Canavan and Christ Beard in their individual capacities.  The defendants shall be served by issuance of summons and service by the U.S. Marshal's Service at the Wright City Police Department, 203 Veterans Memorial Parkway, Wright City, Missouri, 63390.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against Tom Canavan and Christ Beard are **DISMISSED** without prejudice. A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Wright City Police Department and defendants Unknown Eskew, Unknown Tomlin, Unknown Catron, Unknown Lackey, and Unknown

Matthews are **DISMISSED** from this action, without prejudice. A separate order of partial dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this _7th_ day of September, 2021.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE