UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SCHIERBAUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 573 ACL |
| | ) | |
| TOM CANAVAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff William Schierbaum, currently an inmate at Potosi Correctional Center, filed this 42 U.S.C. § 1983 action against officers Tom Canavan and Chris Beard alleging violations of his constitutional rights during the execution of a search warrant. Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 29.) This matter is full briefed and ripe for disposition.

**I.**     **Procedural Background**

Schierbaum filed his Complaint against the Wright City Police Department, Canavan, Beard, and five other law enforcement officers in their official and individual capacities. (Doc. 1.) In its review for frivolity pursuant to 28 U.S.C. § 1915, the Court[1] dismissed Schierbaum's official capacity claims against Canavan and Beard, and dismissed all other defendants from this action. (Doc. 6.) The Court found that Schierbaum adequately stated individual capacity claims for excessive force in violation of the Fourth Amendment against Canavan and Beard. Specifically, Schierbaum alleged that he was in bed "not posing a threat, resisting the officers, or trying to flee when Canavan hit him on the forehead with the butt of a gun." *Id.* at 7.

---

[1]Senior United States District Judge Stephen N. Limbaugh, Jr.

1

Schierbaum also alleged that "the blow incapacitated him, and that while he was incapacitated and bleeding, Canavan and Beard kicked and stomped him." *Id.* The Court directed the Clerk of Court to issue process as to Canavan and Beard on these claims.

In their Motion for Summary Judgment, Defendants argue that they are entitled to summary judgment based on the application of qualified immunity for two separate reasons. First, they argue that the complained-of force—the striking of Schierbaum's head by the rifle—was accidental and does not violate the Fourth Amendment. Second, they contend that the complained-of force was de minimis and therefore does not violate the Fourth Amendment.

Schierbaum has filed a Response, in which he argues that Defendants are not entitled to summary judgment, because the force used against Schierbaum was not reasonable under the circumstances. (Doc. 34.) He states that Canavan struck him in the head with the butt of a gun, knocking him to the floor, and then Canavan and Beard started kicking and stomping him, despite the fact that he "lay on the floor unable to move, and was of no threat to police." *Id.* at 4. Schierbaum attached his own Affidavit and other evidence to his Response, but did not file a Response to Defendants' Statement of Uncontroverted Material Facts ("SUMF"), nor did he cite Defendants' SUMF in his Response.

Defendants filed a Reply, in which they argue that their SUMF is deemed admitted. They argue that the Court should grant their Motion for Summary Judgment on the basis of qualified immunity.

The Court notes that Local Rule 4.01(E) requires a party disputing an opponent's statement of material facts in support of a summary judgment motion to "set forth [the matters in dispute] with specific references to portions of the record, where available, upon which the opposing party relies....All matters set forth in the statement of the movant shall be deemed

admitted for purposes of summary judgment unless specifically controverted by the opposing party." Thus, all well-supported facts in Defendants' SUMF are deemed admitted for purposes of this motion. *See also* Fed. R. Civ. P. 56(e); *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006).

## II.     Facts[2]

Defendants Tom Canavan and Chris Beard were licensed Missouri law enforcement officers employed by the Police Department of Wright City, Missouri, at all relevant times. On December 20, 2016, at approximately 9:15 a.m., Officers Canavan and Beard participated in an arrest of several persons, including Plaintiff William Schierbaum. The arrest took place at 32 Clarence Drive in Wright City, Missouri, which is in Warren County, Missouri. Several other law enforcement officers accompanied Officers Canavan and Beard. The arrests occurred as the officers were executing a search warrant issued by the Circuit Court for Warren County, Missouri. Defendants had information before entering the residence that 32 Clarence was a house being used for the distribution of methamphetamines, occupied by several adults involved in such distribution, and that one of them was a person named William Schierbaum, who had previously been convicted of assault on a law enforcement officer. As a prior and persistent offender, Schierbaum is still serving his sentence as a prisoner with the Missouri Department of Corrections from this conviction.

The officers approached the residence and Canavan knocked loudly on the door for approximately twenty seconds, announcing loudly that he was a police officer with a search warrant. After receiving no response, the officers forced open the door and entered. Inside the

---

[2]The facts are taken from Defendants' Supplemented SUMF.  (Doc. 37.)

residence, they found drugs (including methamphetamines) and drug paraphernalia. As they were making their way through the house, Canavan and Beard entered a bedroom where Schierbaum was, his head under some covers on or near a bed. Neither officer had been previously acquainted with Schierbaum or knew him personally in any way. Schierbaum refused to show his hands when ordered and at one point seemed to move his arms or hands under the bed. Canavan and Beard arrested him by handcuffing him behind his back. In the course of the arrest, Beard's rifle came into contact with Schierbaum's forehead, causing a slight laceration. Beard did not intend to have the rifle so contact his head; the contact was accidental.

After Schierbaum was handcuffed, the officers contacted EMS to respond to the laceration on his head. EMS transported Schierbaum to St. Joseph's Hospital emergency department where, within approximately one hour, he was issued a "fit for confinement" letter, indicating no treatment, medication, or other care was necessary or proper for the laceration and that he was fit for confinement. The only condition given was that he be awakened every four hours for the next twenty-four hours, and checked for ability to answer questions and to walk. Schierbaum was then taken to jail. He received no stitches during his visit to the hospital, and was prescribed no medications. Schierbaum bonded out of jail pending his trial within approximately twenty-four hours of his arrest. He sought no medical care, treatment, or diagnosis with respect to any alleged injury caused by Defendants during the next several months. No evidence has been adduced from any qualified expert witness indicating that any of the physical force used on Schierbaum—accidental or otherwise—was in any way severe, unreasonable, or caused any sort of diagnosable injury or damage to Schierbaum.

As a result of the search warrant execution, Schierbaum and several others of those arrested were charged with and found guilty of, various drug felonies—including endangerment

of a minor due to the proximity of the drugs to a young child at the time—by the Warren County Circuit Court.

### III.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment to a moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party, but only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Mere "metaphysical doubt as to the material facts" is insufficient to defeat summary judgment. *Id.* A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c).

In reviewing the record, a court must not weigh evidence at the summary judgment stage but instead should decide simply whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380.

Schierbaum did not respond to Defendants' Statement of Undisputed Material Facts (Doc. 20-1), as required under Federal Rule of Civil Procedure ("FRCP") 56 and Local Rule 4.01(E). Schierbaum's status as a *pro se* litigant does not excuse him from responding to Defendants' Motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001). With his failure to respond, Schierbaum is deemed to have admitted all of the facts in Defendants' statement of uncontroverted facts. *Turner v. Shinseki*, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F. Supp.2d 1166,

5

1168 (E.D. Mo. 1999)). Summary judgment is not granted in favor of Defendants as a result of Schierbaum's failure to properly respond to Defendants' statement of material facts. Instead, the Court deems the facts set forth by Defendants as true. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 579 (8th Cir. 2006). Defendants must still establish that they are entitled to judgment as a matter of law. *See Id.*

### IV. Discussion

As an initial matter, the Court notes that Defendants' Motion for Summary Judgment only addresses one of the two alleged instances of excessive force: Beard's rifle coming into contact with Schierbaum's head. The Court also issued process on Schierbaum's claim that "the blow [from Beard's rifle] incapacitated him, and that while he was incapacitated and bleeding, Canavan and Beard kicked and stomped him." (Doc. 6 at 7.) Defendants do not, however, address this second instance of alleged excessive force in their Motion. Schierbaum has not expressed an intent to abandon this claim, as he restates the claim in his Response in opposition to Defendants' Motion for Summary Judgment and in his attached Affidavit. (Doc. 34.) As such, the Court construes Defendant's Motion as a Motion for Partial Summary Judgment.

#### A. Qualified Immunity

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burbridge v. City of St. Louis*, 2 F.4th 774, 780 (8th Cir. 2021). "Once a defense of qualified immunity is raised, a plaintiff must offer 'particularized' allegations of unconstitutional or illegal conduct." *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997). "The doctrine of qualified immunity requires an individualized analysis as to each officer, because a person may be held personally liable for a constitutional violation only if his

6

own conduct violated a clearly established constitutional right." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (citations, internal quotation marks, and emphasis omitted). The Supreme Court has emphasized that "qualified immunity represents the norm," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and its protections extend to "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). In determining whether a constitutional violation is established, the Court is obligated to "view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Even if the action in question does violate a constitutional right, to overcome qualified immunity, it must also be shown that the violated right was clearly established. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There is no requirement that "the very action in question has previously been held unlawful," but for an official action to violate a clearly established right, the unlawfulness of that action must be apparent in light of pre-existing law. *Id.* "In other words, the right violated must have been established 'beyond debate.'" *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 417 (8th Cir. 2017) (citation omitted).

### B. Fourth Amendment/Excessive Force

The Fourth Amendment protects the right of individuals to be free from excessive force in the context of an arrest, and violations of this right are cognizable under § 1983. *See Graham*

7

*v. Connor*, 490 U.S. 386, 393-94 (1989). "Excessive force claims under the Fourth Amendment are governed by a reasonableness standard." *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017). In analyzing whether the use of force in a particular case is reasonable, the Court engages in "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). Relevant factors to consider include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"To defeat the defense of qualified immunity in a Fourth Amendment excessive force context, [p]laintiff[ ] must demonstrate that [his] right to be free from [d]efendants' particular use of force was clearly established at the time of the incident." *Molina v. City of St. Louis*, 2021 WL 1222432, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020)). "Broadly speaking, [t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Peterson*, 754 F.3d at 600 (alteration in original) (internal quotation marks and citation omitted). "That said, [w]hile there is no requirement that the very action in question has previously been held unlawful, [plaintiff] can succeed only if earlier cases give [defendant] fair warning that his alleged treatment of [plaintiff] was unconstitutional." *Id.* (first alteration in original) (internal quotation marks and citation omitted).

Defendants argue that the accidentally applied force does not violate the Fourth Amendment pursuant to clearly established law. The undersigned agrees.

8

The Supreme Court has recently reiterated that "[a] seizure requires the use of force *with intent to restrain. Accidental force will not qualify.*" *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (*citing County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)). In other words, "for a government official's physical contact to qualify as a Fourth Amendment seizure, it must be accompanied by an intent to restrain the person seized." *United States v. Somerville*, 2021 WL 3476596, at *11 (D. Minn. May 13, 2021). Indeed, the Supreme Court has specifically stated that "no Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Lewis*, 523 U.S. at 844 (*quoting Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) ("Fourth Amendment seizure [occurs] when there is a governmental termination of freedom of movement *through means intentionally applied.*") (emphasis in original)).

Here, Defendants did not fire a rifle but, rather, Beard's rifle came into contact with Schierbaum's forehead, causing a laceration. (Doc. 29-1 at 2; Doc. 29-2 at 2.) Beard testified that he did not intend to have the rifle contact Schierbaum's head, and that the contact was accidental during the course of attempting to control Schierbaum as he arrested him. (Doc. 29-2 at 2.) Canavan similarly testified that Beard's rifle accidentally came into contact with Schierbaum's forehead in the course of the arrest. (Doc. 29-1 at 2.) As previously noted, Schierbaum has admitted these facts by failing to properly dispute them. Even in his Affidavit attached to his Response, Schierbaum does not allege that either officer *intentionally* struck him with his rifle. Instead, he states that he was lying in bed undressed, "but I was hit in the forehead with the butt of an assault weapon by detective Tom Canavan." (Doc. 34 at 2.)

9

Moreover, it was reasonable for Defendants to have their weapons drawn when attempting to arrest Schierbaum. When the officers entered the bedroom, Schierbaum "refused to show his hands when ordered and at one point seemed to move his arms or hands under the bed." (Doc. 29-1 at 2; Doc. 29-2 at 2.) By his own admission, Schierbaum was lying in bed with "covers [] over [his] head," and was attempting to "get up to put [his] underwear on" when the officers arrived. (Doc. 34 at 2.) It is undisputed then that Schierbaum's hands were not visible and that he did not immediately comply with the officers' instructions to show his hands. The Defendant officers were executing a search warrant on a methamphetamine house and knew at least one person in the house already had a conviction for assault on a law enforcement officer. Under these circumstances, Defendants acted reasonably in drawing their weapons as they entered the bedroom. The accidental force applied by Beard's rifle did not clearly violate Schierbaum's Fourth Amendment rights.

Thus, Defendants are entitled to qualified immunity on Schierbaum's claim that Defendants applied excessive force when Beard's rifle came into contact with his forehead and caused a laceration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 29) is **granted**. A separate Judgment in favor of Defendants will accompany this Memorandum and Order.

Dated this 26th day of October, 2022.

/s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE